1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEVI & KORSINSKY LLP**
Adam C. McCall (SBN 302130)
Email: amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

LI JIN, Individually and On Behalf of
All Others Similarly Situated,

                    Plaintiff,

        v.

REGULUS THERAPEUTICS INC.,
JOSEPH P. HAGAN, PAUL C.
GRINT, and TIMOTHY WRIGHT,

                    Defendants.

No. **'17 CV 0267 LAB JMA**

**CLASS ACTION**

**COMPLAINT FOR
VIOLATIONS OF THE
FEDERAL SECURITIES LAWS**

Demand for Jury Trial

        Plaintiff Li Jin ("Plaintiff"), by and through his undersigned counsel, brings this securities class action on behalf of himself and all other persons and entities who purchased or otherwise acquired the publicly-traded common stock of Regulus Therapeutics, Inc. ("Regulus" or the "Company"), between February 17, 2016 and January 27, 2017, inclusive (the "Class Period"), and were damaged thereby (the "Class"). Plaintiff alleges that defendants Regulus, Joseph P. Hagan, Paul C. Grint, and Timothy Wright (collectively, "Defendants") violated the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78a, *et seq.*

## **NATURE OF THE CLAIM**

1.    This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Regulus common stock during the Class Period.

2.    This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

3.    Regulus is a biopharmaceutical company focused on discovering and developing first-in-class drugs that target microRNAs to treat a broad range of diseases.

4.    Throughout the Class Period, as detailed below, the Company made materially false and/or misleading statements, concerning the safety of its wholly-owned lead product candidate, RG-101.

5.    On April 15, 2016, the Company hosted a webcast and conference call to present additional interim data on RG-101 at the International Liver Conference. In support of the webcast/call, the Company prepared a slide presentation entitled "ILC 2016: RG-101 Phase II Results Webcast & Conference Call." On slide 14, entitled "Summary of Adverse Events (AEs)," the company disclosed in a footnote that the Daklinza arm of the RG-101 Phase II trial had a severe adverse event from jaundice.

6.    On the release of the news, the Company's share price declined from $8.13 per share on April 14, 2016, to close at $7.23 per share on April 15, 2016, a drop of $0.90, or approximately 11%.

7.    Then, on June 27, 2016, the Company issued a press release announcing that the Regulus had received verbal notice from the FDA that its Investigational New Drug application ("IND") for RG-101 for the treatment of

chronic hepatitis C virus infection had been placed on full clinical hold after a second serious adverse event of jaundice was reported.

8.     As the truth about RG-101's safety was revealed, the Company's stock price declined from $5.01 per share on June 27, 2016, to close at $2.54 per share on June 28, 2016, a drop of approximately 49%.

9.     Finally, on January 27, 2017, the Company announced it expected to submit a complete response to the FDA with the requested information in the fourth quarter of 2017 and stated that there can be "no assurances as to when the clinical hold on RG-101 may be lifted, if at all." On the release of the news, the Company's share price declined from $2.25 per share of stock on January 27, 2017, to close at $1.30 per share on January 30, 2017, a drop of approximately 53.3%.

10.     As noted in more detail herein, Regulus' statements regarding the RG-101 program contained materially false information or omitted information necessary to make those statements not misleading. As a result, Plaintiff and other members of the Class purchased Regulus common stock at artificially inflated prices and thereby suffered significant losses and damages.

### JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act, 15 U.S.C. §78aa.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged

herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

14.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.    Plaintiff purchased Regulus common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

16.    Defendant Regulus is a Delaware corporation with its principal executive offices located at 10614 Science Center Drive, San Diego, CA 92121. Regulus' common stock trades on NASDAQ under the ticker symbol "RGLS."

17.    Defendant Paul C. Grint ("Grint") is and has been the Company's Chief Executive Officer ("CEO") and President since June 1, 2015.

18.    Defendant Joseph P. Hagan ("Hagan") is the Company's Chief Operating Officer, Principal Financial Officer and Principal Accounting Officer and has served in these roles since January 4, 2016.

19.    Defendant Dr. Timothy Wright ("Wright") is and has been the Company's Chief R&D Officer since joining Regulus in October 2016.

20.    Defendants in paragraphs 17-19 are collectively referred to herein as the "Individual Defendants."

21.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the

4

Company at the highest levels;

(c)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)    was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)    approved or ratified these statements in violation of the federal securities laws.

22.    Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about RG-101, as well as Regulus' business and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

23.    As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's drug candidates (especially RG-101), including progress and issues concerning the development of these drug candidates, and the Company's present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's

publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

24.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Regulus' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

25.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Regulus common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public concerning RG-101's safety and potential for commercialization, and thus Regulus' business and intrinsic value of its common stock and (ii) caused Plaintiff and other shareholders to purchase Regulus common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

26.    The Company was formed in 2007 with the contribution of intellectual property, know-how and capital from Alnylam Pharmaceuticals, Inc. ("Alnylam") and Ionis Parmaceuticals, Inc. Regulus is a biopharmaceutical company focused on discovering and developing first-in-class drugs that target *micro*RNA to treat a broad range of diseases.

27.    Regulus' most advanced program is RG-101, an anti-microRNA targeting host factors for the hepatitis C virus, or HCV infection. RG-101 targets miR-122, a highly conserved liver-specific substance that plays an important role in cholesterol and fatty-acid synthesis. RG-101 uses proven RNA therapeutics technologies such as GalNAc conjugation ("GalNAc process Technology") provided by Alnylam. The Company has evaluated the safety and efficacy of RG-101 in Phase I and Phase II studies.

28.    In August 2015, Regulus initiated a Phase II study investigating RG-101 designed to evaluate a four-week treatment regimen containing administration of RG-101 in combination with other antiviral agents.

29.    In January 2016, Regulus initiated a multi-center, open label, non-randomized comparative Phase I study designed to evaluate the safety, tolerability, pharmacokinetics and pharmacodynamics of RG-101, and further explore RG-101 in hepatitis C infected patients with renal insufficiency or end-stage renal disease ("ESRD").

30.    On January 21, 2016, Regulus issued a press release announcing complete RG-101 enrollment in the Phase II combination study and initiation of Phase I study of RG-101 in subjects with severe renal insufficiency or ESRD.

*Material Misstatements and Omissions during the Class Period*

31.   The Class Period begins on February 17, 2016 when Regulus issued a press release announcing the interim results from its ongoing Phase II clinical study evaluating RG-101. The press release stated in relevant part:

> LA JOLLA, Calif., Feb. 17, 2016 /PRNewswire/ -- Regulus Therapeutics Inc. (NASDAQ:RGLS), a biopharmaceutical company leading the discovery and development of innovative medicines targeting microRNAs, today announced interim results from one of the company's ongoing Phase II studies of RG-101 for the treatment of Hepatitis C Virus infection (HCV). The study was designed to evaluate a shortened, four-week treatment regimen containing a subcutaneous administration of 2 mg/kg of RG-101 at Day 1 and Day 29, in combination with 4 weeks of once/daily approved anti-viral agents Harvoni®, Olysio®, or Daklinza™. The study enrolled 79 treatment naïve genotype 1 and 4 HCV patients (Harvoni® arm, n=27, Olysio® arm, n=27, Daklinza™ arm, n=25). Thirty-eight patients have been evaluated through 8 weeks of follow up. Ninety-seven percent of those patients (37/38) had HCV RNA viral load measurements below the limit of quantification. ***To date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate, and with no study discontinuations.*** For those patients through 12 weeks of follow-up, 100% remained below the limit of quantification (14/14). The primary endpoint analysis (12 week follow up) for all 79 patients in the study are anticipated to be reported in late Q2 2016.

Emphasis added.

32.   In the Form 8-K filed with SEC on the same date, the Company reiterated its earlier statements by stating:

> On February 17, 2016, we announced interim results from our ongoing Phase II clinical study evaluating RG-101, our wholly-owned GalNac-conjugated anti-miR targeting microRNA-122 for the treatment of hepatitis C virus infection, or HCV. The study was designed to evaluate a shortened, four-week treatment regimen containing a subcutaneous administration of 2 mg/kg of RG-101

at Day 1 and Day 29, in combination with four weeks of once daily approved anti-viral agents Harvoni®, Olysio®, or Daklinza®. The study enrolled 79 treatment naïve genotype 1 and 4 HCV patients (Harvoni® arm, n=27, Olysio® arm, n=27, Daklinza® arm, n=25). Thirty-eight patients have been evaluated through 8 weeks of follow up. Ninety-seven percent of those patients (37/38) had HCV RNA viral load measurements below the limit of quantification. ***To date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate, and with no study discontinuations.*** For those patients through 12 weeks of follow-up, 100% remained below the limit of quantification (14/14). The primary endpoint analysis (12 week follow up) for all 79 patients in the study are anticipated to be reported in late Q2 2016.

Emphasis added.

33.     On February 22, 2016, Regulus issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2015. For the fiscal fourth quarter, Regulus reported a net loss of $7.2 million and a basic net loss of $0.14 per share, compared to a net loss of $22.2 million and a basic net loss of $0.47 per share for the same period in 2013. For the year, Regulus reported a net loss of $55.7 million and a basic net loss of $1.08 per share, compared to a net loss of $56.7 million and a basic net loss of $1.29 for the same period in 2013. The press release stated in relevant part:

LA JOLLA, Calif., February 22, 2016 – Regulus Therapeutics Inc. (NASDAQ:RGLS), a biopharmaceutical company leading the discovery and development of innovative medicines targeting microRNAs, today reported financial results for the fourth quarter and full-year ended December 31, 2015 and provided a summary of recent corporate highlights.

"2015 was a milestone year for the company with the filing of three investigational new drug applications in the United States, and two

clinical trial applications in the European Union," said Paul Grint, M.D., President and CEO of Regulus. "***Our priorities for 2016, based on the data seen to date, include acceleration of our clinical programs, advancing our pipeline and defining the regulatory path to approval for our lead programs.***"

[…]

**Recent Highlights**

RG-101 (GalNAc-conjugated anti-miR122 for the treatment of Hepatitis C Virus)

• **Interim Results from Phase II Combination Study**. Regulus recently announced interim results from one of the company's ongoing Phase II studies of RG-101 for the treatment of Hepatitis C Virus infection (HCV). The study was designed to evaluate a shortened, four-week treatment regimen containing a subcutaneous administration of 2 mg/kg of RG-101 at Day 1 and Day 29, in combination with 4 weeks of once/daily approved anti-viral agents Harvoni®, Olysio®, or Daklinza™. The study enrolled 79 treatment naïve genotype 1 and 4 HCV patients (Harvoni® arm, n=27, Olysio® arm, n=27, Daklinza™ arm, n=25). Thirty-eight patients have been evaluated through 8 weeks of follow up. Ninety-seven percent of those patients (37/38) had HCV RNA viral load measurements below the limit of quantification. ***To date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate, and with no study discontinuations.*** For those patients through 12 weeks of follow-up, 100% remained below the limit of quantification (14/14). The primary endpoint analysis (12 week follow up) for all 79 patients in the study are anticipated to be reported in late Q2 2016.

[…]

• Enrollment Nearly Complete in US Phase I Study. Enrollment is nearly complete in a multi-center, open label, non-randomized Phase I study to compare the safety, tolerability, pharmacokinetics, and pharmacodynamics of RG-101 in subjects with severe renal insufficiency or end-stage

10

renal disease ("ESRD") to healthy control subjects, and further explore RG-101 in hepatitis C infected subjects with severe renal insufficiency or ESRD. Regulus anticipates reporting safety and efficacy data from the HCV/severe renal impairment or ESRD arm in the second half of 2016.

Emphasis added.

34.     On February 23, 2016, Regulus filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2015 ("FY 2015 10-K"), which was signed and certified under the Sarbanes Oxley Act of 2002 by Grint and Hagan. In the FY 2015 10-K the Company reaffirmed the statements in the corresponding press release. More specifically, the Company stated: "*[t]o date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate (headache and fatigue most commonly reported, each at approximately 11%), two SAEs reported during the follow-up period, and with no study discontinuations.*"

35.     On April 15, 2016, Regulus issued a press release announcing interim data on RG-101 presented at the International Liver Congress. The press release stated in relevant part:

LA JOLLA, Calif., April 15, 2016 /PRNewswire/ -- Regulus Therapeutics Inc. (NASDAQ:RGLS), a biopharmaceutical company leading the discovery and development of innovative medicines targeting microRNAs, today announced additional interim results from one of the company's ongoing Phase II studies of RG-101 for the treatment of Hepatitis C Virus infection (HCV) during an oral presentation at the International Liver Congress 2016 (ILC 2016) taking place April 13-17 in Barcelona, Spain. The study was designed to evaluate a shortened, four-week treatment regimen containing a subcutaneous administration of 2 mg/kg of RG-101 at Day 1 and Day 29, in combination with 4 weeks of once/daily approved anti-viral agents Harvoni®, Olysio®, or Daklinza™. The study enrolled 79 treatment naïve

11

genotype 1 and 4 HCV patients (Harvoni® arm, n=27, Olysio® arm, n=27, Daklinza™ arm, n=25).

[…]

"We believe the data reported at the ILC meeting further demonstrate the clinical utility of RG-101 to shorten oral HCV treatment regimens to just four weeks," said Paul Grint, M.D., President and CEO of Regulus. ***"With interim data now through 24 weeks of follow-up, the consistent trend in efficacy and safety is encouraging, which supports the potential of RG-101 to become a backbone agent in combination with all classes of oral therapies.*** Throughout the year, we look forward to obtaining more data from multiple studies across our broad Phase 2 development program."

***To date, RG-101 has been generally well tolerated with the majority of adverse events considered mild or moderate, and with no study discontinuations.*** Changes in pharmacodynamic markers are indicative of effective target engagement and consistent with the company's prior experience with miR-122 inhibition. The primary endpoint analysis (12 week follow up) for all 79 patients in the study is anticipated to be reported in late Q2 2016.

Emphasis added.

36.    The statements in paragraphs 31-35 above were false and/or misleading as well as failed to disclose material adverse facts about RG-101, and thus the Company's business and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) RG-101 was not safe and well tolerated by all patients in the ongoing studies, (ii) cases of serious adverse events ("SAE") were discovered, (iii) the SAEs were proof of serious concerns about the safety profile of RG-101, (iv) Regulus would likely need to produce extensive data to the U.S Food and Drug Administration ("FDA") to continue clinical trials of RG-101, and (v) as a result of the foregoing, Defendants' statements about Regulus' business and prospects, were false and misleading and/or lacked a reasonable basis.

### *The Truth Begins to Emerge*

37.     On April 15, 2016, the Company hosted a webcast and conference call to present additional interim data on RG-101 at the International Liver Conference. In support of the webcast/call, the Company prepared a slide presentation entitled "ILC 2016: RG-101 Phase II Results Webcast & Conference Call." On slide 14, entitled "Summary of Adverse Events (AEs)," the company disclosed in a footnote that the Daklinza arm of the RG-101 Phase II trial had a severe adverse event from jaundice.

38.     On the release of the news, the Company's share price declined from $8.13 per share on April 14, 2016, to close at $7.23 per share on April 15, 2016, a drop of $0.90, or approximately 11%.

### *The Truth Continues to Emerge*

39.     On June 27, 2016, Regulus issued a press release and filed a Form 8-K with the SEC announcing that the Company had received verbal notice from the FDA that Regulus' IND for RG-101 for the treatment of chronic hepatitis C virus infection had been placed on full clinical hold after a second serious adverse event of jaundice was reported. The press release stated in relevant part:

> LA JOLLA, Calif., June 27, 2016 /PRNewswire/ -- Regulus Therapeutics Inc. (Nasdaq: RGLS), a biopharmaceutical company leading the discovery and development of innovative medicines targeting microRNAs, today announced it ***received verbal notice from the U.S. Food and Drug Administration (FDA) that its Investigational New Drug (IND) for RG-101 for the treatment of chronic hepatitis C virus (HCV) infection has been placed on clinical hold***. Regulus anticipates it will receive a formal clinical hold letter from the FDA within 30 days and plans to work diligently with the agency to seek the release of the clinical hold.
>
> ***The FDA initiated the clinical hold after Regulus reported a second serious adverse event (SAE) of jaundice***. The SAE

13

occurred in a HCV patient with end-stage renal disease on dialysis enrolled in its on-going Phase I US study 117 days after receiving a single dose of RG-101.

*Timelines for Regulus' three on-going studies of RG-101 are not expected to be impacted as all patients have been enrolled and completed their dosing of RG-101 and will continue with protocol scheduled visits.* Regulus remains on track to deliver follow-up results from these studies at upcoming relevant scientific meetings.

(Emphasis added.)

40.    On the release of the news, the Company's share price declined from $5.01 per share of stock on June 27, 2016, to close at $2.54 per share on June 28, 2016, a drop of approximately 49.3%.

41.    On July 27, 2016, Regulus issued a press release and filed a Form 8-K with the SEC announcing that the Company had received written communication from the FDA outlining information required to resolve the clinical hold for its Investigational New Drug (IND) for RG-101. The press release stated in relevant part:

LA JOLLA, Calif., July 27, 2016 /PRNewswire/ -- Regulus Therapeutics Inc. (Nasdaq: RGLS), a biopharmaceutical company leading the discovery and development of innovative medicines targeting microRNAs, today *announced that, as anticipated, it received written communication from the U.S. Food and Drug Administration (FDA) outlining information required to resolve the clinical hold for its Investigational New Drug (IND) for RG-101, which was announced on June 27, 2016.*

*In the written communication, the FDA requested the following from the company: detailed safety data analysis from preclinical and clinical studies; exploration of potential mechanisms of hepatoxicity in non-clinical models; review and input from independent hepatotoxicity experts; additional PK data from the US Phase 1 study; and a risk/benefit assessment for the proposed therapeutic regimens containing RG-101. The company anticipates submitting the necessary information by early Q4*

14

*2016.* The FDA will notify Regulus of its decision within 30 days of receipt of the complete response to the issues.

"We are working expeditiously to resolve the issues outlined in the letter and anticipate a decision from the FDA in the fourth quarter," said Paul Grint, M.D., President and Chief Executive Officer of Regulus. "Timelines of on-going studies have not been impacted by the clinical hold, and we remain on track to deliver follow-up results from ongoing RG-101 studies at upcoming relevant scientific meetings later this year."

Emphasis added.

42.    On August 3, 2016, Regulus filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the second fiscal quarter ended June 30, 2016 ("2Q2016 10-Q"), which was signed and certified under the Sarbanes Oxley Act of 2002 by Grint and Hagan.  The 2Q2016 10-Q stated in relevant part:

In June 2016, we received verbal notice from the U.S. Food and Drug Administration, or FDA, that our IND for RG-101 for the treatment of chronic HCV infection has been placed on clinical hold. The FDA initiated the clinical-stage renal disease on dialysis enrolled in our on-going Phase I US study 117 days after receiving a single dose of RG-101. Timelines for our three on-going studies of RG-101 are not expected to be impacted as all patients have been enrolled and completed their dosing of RG-101 and will continue with protocol scheduled visits. In July 2016, *we received a formal clinical hold letter from the FDA requesting the following from us: detailed safety data analysis from preclinical and clinical studies; exploration of potential mechanisms of hepatoxicity in non-clinical models; review and input from independent hepatotoxicity experts; additional PK data from the US Phase 1 study; and a risk/benefit assessment for the proposed therapeutic regimen containing RG-101. We anticipate submitting the necessary information by early Q4 2016. The FDA will notify us of its decision within 30 days of receipt of the complete response to the issues.* We plan to work diligently with the FDA to seek the release of the clinical hold.

15

43.     On November 2, 2016, Regulus filed a Form 10-Q with the SEC announcing the Company's financial and operating results for the third fiscal quarter ended September 30, 2016, which was signed and certified under the Sarbanes Oxley Act of 2002 by Grint and Hagan.

44.     The next day, the Company held a conference call with analysts concerning the Company's third fiscal quarter results. During the call, Defendants Grint, Hagan, and Wright each spoke about the Company's response to the FDA on its clinical hold of RG-101. In relevant part, the Individual Defendants stated:

**Tim Wright** Regulus Therapeutics Inc. – Chief R&D Officer

Thanks, Paul. Before I go into an RG-101 update, I'd like to share with you my first impressions of Regulus and why I believe it's a great time to be part of this company.

[…]

Moving on to the current status of RG-101. The work to address the clinical hold was well underway when I joined the company. Since joining, I assumed leadership for the team responsible for the response to the FDA. As I'm sure you're aware, in late July, Regulus received a formal clinical hold letter from the FDA requesting additional information, which included five items. First, a detailed safety analysis from preclinical and clinical studies; second, exploration of potential mechanisms of hepatotoxicity in nonclinical models; third, review and input from independent hepatotoxicity experts; fourth, additional pharmacokinetic data from the U.S. Phase 1 study; and fifth, a risk-benefit assessment for the proposed therapeutic regimens containing RG-101.

*Since the receipt of the letter detailing the request for additional data and analysis, we had initiated additional mechanistic work, the data of which we now believe will enhance the package we plan to submit. Furthermore, we've been formulating a plan that may provide a path forward. Based on the timing of the*

*results of these additional studies, which we intend to include in our response, we've pushed out our resubmission time line several weeks and, thus, would now expect a response from the agency in the first quarter of 2017. Our goal is to get off clinical hold and initiate additional planned studies, including the single-visit cure regimen in collaboration with GSK and, ultimately, to partner the program.*

*While we are in the midst of the clinical hold, we have decided to focus our resources on addressing the issues outlined by the agency, completing the additional studies I mentioned and assembling this comprehensive package for the FDA response.* We are not planning any further interim data cuts on our ongoing RG-101 studies. We do, however, continue to collect safety data on all active clinical trials, and we'll update our safety database accordingly. We do not plan further evaluation of the efficacy data until the hold is resolved.

Now stepping back and reiterating why I decided to join Regulus at this time. It's clear that Regulus is at the forefront of developing truly novel therapeutics that can broadly address disease pathways. We look forward to sharing more with you at the upcoming R&D Day on December 6, when we plan to announce our next clinical candidate.

\*       \*       \*

**Paul Grint** Regulus Therapeutics Inc. – President and CEO

*Thank you, Jay. I hope you found this update on our clinical portfolio helpful. Our time lines on providing the RG-101 response to the FDA has moved out a couple of months due to our decision to generate and include additional results. We feel more confident now, based on what we've learned over the last several months, that this comprehensive submission could provide a path forward for the program and look forward to the FDA feedback in the first quarter next year.*

\*       \*       \*

**Liana Moussatos** Wedbush Securities Inc. – Analyst

17

Just following up, to be clear, what is left that you need to do in order to submit the package to the FDA to get RG-101 off clinical hold? And how long do each of these items take? Is there only eight weeks left?

**Tim Wright** Regulus Therapeutics Inc. – Chief R&D Officer

I'm sorry, we missed the end of your --

**Paul Grint** Regulus Therapeutics Inc. – President and CEO

If there's only eight weeks left.

**Tim Wright** Regulus Therapeutics Inc. – Chief R&D Officer

*Are there only eight weeks left? Well, what I can tell you is that many of these studies started before I joined, which was four weeks ago. And so there are some studies that we'll take a few more weeks to complete. And then as Paul mentioned, we have the report writing and the compiling and then the overarching work that needs to be feeding back in each of these five items.*

*Suffice it to say that the -- some of the items were relatively easy to address and compile the data, such as the existing safety database, although we're updating that in real time, and we'll do so after the submission. But other items, in particular, some of the in vivo work that had to be done, that we felt was important to do, will take a few more weeks for the in live portion, and then we have the analysis.*

*So that's -- that gives you as much detail as we're willing to share at this time, but we anticipate, like I said, having this done in several weeks and expect the response in Q1.*

Emphasis added.

45.     On December 7, 2016 the Company held its R&D Day.  As part of this day, the Company held a corporate analyst meeting where Defendant Grint made the following statements concerning the Company's progress and expectations for resolving the RG-101 clinical hold:

**Paul Grint** Regulus Therapeutics Inc – President, CEO

Thank you very much, Jay. Well, we'd like to thank you all for your attention today. We really appreciate everyone being here all listening in.

We've had the opportunity for the first time to obviously showcase some of our very bright and smart scientists within the company together with, I think, giving you a good insight, and to some of the collaborations that we have where they can actually take us from a portfolio standpoint.

I was going to briefly talk about key program events anticipated really over the next six quarters. Today, we haven't talked about RG-101 but I just want to spend a couple of minutes talking about it for you.

Just to remind you, this program was moving well. We did see [52] serious adverse events of hyperbilirubinemia or jaundice and we've put on clinical hold by the FDA back in June of this year.

***As we've guided, we've been actively working on the responses to the FDA. The FDA asked us a number of questions, all of which we believe we could address. We guided that basically, we were going to submit the response around yearend back to the FDA. We are on track for that and you can see that we're looking for obviously a response back from the FDA in the first quarter of next year.***

***We've undertaken a lot of additional work that we believe that we have a good idea of how 101 maybe associated with some of the impacts that we see in patients and we believe that we have a good part [sic] forward and that's basically what we're going to be submitting to the FDA.***

Clearly, not knowing whether or not we're going to be off hold then we won't going to talk a lot in principle about where we would take the program in the future. ***But obviously, we're excited hopefully to submit the package, enter in dialogue with the FDA and be able to restart the clinical program and clearly, we'll***

*announce that and give you guidance with regard to what we're doing clinically if that's the case in the early part of next year.*

\*          \*          \*

**Alan Carr** Needham & Company – Analyst

I guess following up on that, can you respectively define them? And then also to bring up 101, I wonder if you can maybe elaborate a bit about - Paul, you mentioned earlier a good idea of how 101 maybe associated with some of the side effects. I wonder if you can elaborate on that, too. Thanks.

**Paul Grint** Regulus Therapeutics Inc – President, CEO

Yes. Let me - thank you. Let me check with the last one. Yes. We're not talking in details. So*, I mean, clearly, when we were put on clinical hold by the FDA, they asked us to do a number of things which was just to remind you, one, provide a detailed safety summary from all the ongoing studies which obviously we're able to do.*

Investigate potential mechanisms, so we've really done a lot of pre-clinical work and we haven't seen any changes in bilirubin in this pre-clinical studies. But we did continue to investigate and I think we found some interesting biology that we've obviously been working on in compiling some of that to form the basis of that part of the response.

And there were other components of the response, including I think from our standpoint a great request which was defining the risk benefit of RG-101. And just to remind you, we were very excited when we did the collaboration with GSK in heading towards sort of one - circle one visit cure, the injection-based therapy in a single visit. A part with that GSK still remains very, very interested obviously in 101, continued to collaborate but we cannot do that until we get off hold.

So basically we're not going to give a lot more detail at this point. *I mean, that's going to be in the package and we'll see how the FDA responds to that in the first quarter next year.*

20

46.    The statements in paragraphs 39-45 above were false and/or misleading as well as failed to disclose material adverse facts about RG-101, and thus the Company's business and prospects. Specifically, these statements were false and/or misleading, lacked a reasonable basis, and/or failed to disclose that: (i) the Company's response to the FDA in late 2016 did not contain sufficient information to lift the clinical hold; (ii) that the complete response to potentially resolve the clinical hold of RG-101 was going to take a longer time and be more detailed than Defendants had led investors to believe; (iii) that the Company may never be able to lift the clinical hold of RG-101; and (iv) as a result of the foregoing, Defendants' statements about Regulus' business and prospects, were false and misleading and/or lacked a reasonable basis.

### The Truth Emerges

47.    On January 27, 2017, Regulus issued a press release and filed a Form 8-K with the SEC announcing that the Company had received written communication from the FDA outlining information required to resolve the clinical hold for its Investigational New Drug (IND) for RG-101. The press release stated in relevant part:

> the U.S. Food and Drug Administration ("FDA") has informed us that the full clinical hold placed on our RG-101 clinical development program in June 2016 will remain in effect pending the FDA's review of certain pre-clinical and clinical information to be submitted by us to the FDA, including a final preclinical study safety report for RG-101, final efficacy and safety data from certain clinical trials of RG-101, additional expert opinion of liver safety data in light of the proposed mechanism of hyperbilirubinemia, and an updated risk/benefit assessment of the proposed therapeutic regimens using RG-101.
>
> We currently anticipate submitting a complete response to the FDA with the requested information in the fourth quarter of 2017.

21

There can be no assurances as to when the clinical hold on RG-101 may be lifted, if at all.

48.     On the release of the news, the Company's share price declined from $2.25 per share of stock on January 27, 2017, to close at $1.30 per share on January 30, 2017, a drop of approximately 53.3%.

## SCIENTER ALLEGATIONS

49.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Regulus, their control over, and/or receipt and/or modification of Regulus' allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Regulus, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

50.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Regulus' misconduct and its lack of operational and financial controls was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Regulus' share price was a direct result of the nature and extent of Defendants'

fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

51.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of the safety of RG-101 and thus Regulus' business and prospects, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Regulus' common stock to be artificially inflated. Plaintiff and other Class members purchased Regulus' common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

52.     At all relevant times, the market for Regulus securities was an efficient market for the following reasons, among others:

(a)     Regulus securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b)     During the Class Period, Regulus securities were actively traded,

1    demonstrating a strong presumption of an efficient market;

2        (c)    As a regulated issuer, Regulus filed with the SEC periodic public
3    reports during the Class Period;

4        (d)    Regulus regularly communicated with public investors via
5    established market communication mechanisms;

6        (e)    Regulus was followed by securities analysts employed by major
7    brokerage firms who wrote reports that were distributed to the sales force and
8    certain customers of brokerage firms during the Class Period. Each of these
9    reports was publicly available and entered the public marketplace; and

10       (f)    Unexpected material news about Regulus was rapidly reflected in
11   and incorporated into the Company's stock price during the Class Period.

12   53.    As a result of the foregoing, the market for Regulus securities
13   promptly digested current information regarding Regulus from all publicly
14   available sources and reflected such information in Regulus' stock price. Under
15   these circumstances, all purchasers of Regulus securities during the Class Period
16   suffered similar injury through their purchase of Regulus' securities at artificially
17   inflated prices, and a presumption of reliance applies.

18   54.    Alternatively, reliance need not be proven in this action because the
19   action involves omissions and deficient disclosures. Positive proof of reliance is
20   not a prerequisite to recovery pursuant to ruling of the United States Supreme
21   Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All
22   that is necessary is that the facts withheld be material in the sense that a reasonable
23   investor might have considered the omitted information important in deciding
24   whether to buy or sell the subject security. Here, the facts withheld are material
25   because an investor would have considered the Company's true net losses and
26   adequacy of internal controls over financial reporting when deciding whether to
27   purchase and/or sell stock in Regulus.

28

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

55.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

56.    To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

57.    Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Regulus who knew that the "forward-looking statement" was false. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

## CLASS ACTION ALLEGATIONS

58.    Plaintiff brings this action on behalf of all individuals and entities who purchased acquired Regulus common stock on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

59.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, shares of Regulus' common stock were actively traded on the NASDAQ. While the exact number

of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Regulus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of October 28, 2016, Regulus had 52,923,305 outstanding shares of common stock. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

60.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

61.    Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

62.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)    whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements concerning RG-101;

(c)    whether the price of Regulus securities during the Class Period was artificially inflated because of the defendants' conduct complained

of herein; and

(d)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

63.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **COUNT I**

### ***Violation of Section 10(b) and Rule 10b-5 Against All Defendants***

64.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Regulus common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

66.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Regulus securities in violation of Section

10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

67.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about RG-101 and thus the business and future prospects of Regulus as specified herein.

68.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Regulus' value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about RG-101 and Regulus' business and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Regulus common stock during the Class Period.

69.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's SEC

filings and public statements concerning RG-101; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's drug candidates, including RG-101, at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

70.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing RG-101's safety issues and thus Regulus' business and future prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misrepresentations concerning the safety of RG-101 throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Regulus' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Regulus' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of

the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Regulus' securities during the Class Period at artificially high prices and were or will be damaged thereby.

72.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding RG-101, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Regulus common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

73.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

75.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

76.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Regulus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

79.     As set forth above, Regulus and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

80.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

81.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)    Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)    Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

//
//
//
//
//
//

32

Dated: February 10, 2017

Respectfully submitted,

**LEVI & KORSINSKY LLP**

*/s/ Adam C. McCall*
Adam C. McCall (SBN 302130)
Email: amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290

-and-

Nicholas I. Porritt
Alexander A. Krot III
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel:   (202) 524-4290
Fax:   (202) 333-2121
(*pro hac vice applications forthcoming*)

*Attorneys for Plaintiff*

33